**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEPHEN P. TROY, JR.<br><br>              Plaintiff,<br>v.<br><br>SAMSON MANUFACTURING<br>CORPORATION and ATLANTIC<br>RESEARCH MARKETING SYSTEMS,<br>INC.,<br><br>              Defendants. | Civil Action No. 11-cv-10384 |

## COMPLAINT

Plaintiff Stephen P. Troy, Jr. ("Mr. Troy") files this Complaint and demand for jury trial against Defendants Samson Manufacturing Corp. ("Samson Mfg.") and Atlantic Research Marketing Systems, Inc. ("A.R.M.S.") (collectively, "Defendants") for patent infringement and for a determination of priority pursuant to 35 U.S.C. §§ 146 and 291.  Plaintiff states and alleges the following:

## PARTIES

1.     Plaintiff Stephen P. Troy is an individual who is domiciled in Massachusetts.

2.     Upon information and belief, Defendant Samson Mfg. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, at 110 Christian Lane, Whately, Massachusetts 01373; Scott W. Samson ("Mr. Samson") is the President, Treasurer, and Secretary of Defendant Samson Mfg.

3.      Upon information and belief, Defendant A.R.M.S. is a Massachusetts corporation having a principal place of business at 230 W. Center Street, West Bridgewater, MA 02379; Richard Swan is the President and a Director of A.R.M.S.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 35 U.S.C. §§ 146 and 291 and 28 U.S.C. §§ 1331 and 1338(a).

5.      Jurisdiction over the Defendant Samson Mfg. is conferred in that, upon information and belief, Samson Mfg. is the real party in interest pursuant to 35 U.S.C. § 146. *See* Samson Notice of Real Party in Interest (Paper No. 4, dated June 18, 2009) (attached hereto as Exhibit 1), and because Samson Mfg. is a Massachusetts corporation that resides in Massachusetts and makes, sells and offers to sell infringing products in Massachusetts.

6.      Jurisdiction over the Defendant A.R.M.S. is conferred in that A.R.M.S. is a Massachusetts corporation.

7.      As both Plaintiff and Defendants are Massachusetts residents, venue is proper in the District of Massachusetts pursuant to 35 U.S.C. § 146 and/or 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## STATEMENT OF FACTS

8.      Stephen P. Troy ("Mr. Troy") is President of Troy Industries, Inc. ("Troy Ind."), a Massachusetts company specializing in the design, manufacture, and marketing of firearms components and accessories.

9.      Samson Mfg. is a manufacturing company that is predominately engaged in the machining of various tools and parts.  Since at least December 2001, Mr. Samson has been president of Samson.

10.     In or around January 2003, Troy began designing and developing a firearm component to be retrofitted to the M16 rifle and carbine.  Troy named this component the Modular Rail Forend ("M.R.F.").  The M.R.F. is designed to attach to a firearm solely by clamping to the barrel nut of the firearm via a clamp that screws into the upper piece and clamps the handguard to the barrel nut.  In this way, the M.R.F. is "free-floating," in that it does not touch the barrel of the weapon when installed.

11.     In or around April 2003, Troy met with Scott Samson of Samson Mfg. to discuss the possibility of Samson Mfg. machining components of the M.R.F. that Troy had designed.  On April 9, 2003, Samson signed a Confidentiality Agreement with Troy (attached hereto as Exhibit 2), whereby Samson agreed to hold in trust and strict confidence Troy's confidential business information and to use it only for the business of Troy.  Troy subsequently showed Samson drawings and sketches of the M.R.F. that Troy prepared.  Troy informed Samson that these drawings were confidential and proprietary business information.

12.     At the time he met with Mr. Troy and was shown Troy's confidential designs, Mr. Samson had no background in the design of firearms and firearm components and accessories.

13.     From April through early February 2004, Troy continued to develop drawings and prepare for the manufacture of the M.R.F., including having M.R.F. components machined by Samson.  To this end, under Troy's direction, Samson prepared drawings and machined several prototypes of the M.R.F. handguard.

14.     Troy displayed these prototypes at the Annual Shooting Hunting and Outdoor Trade Show ("SHOT Show") that was held in Las Vegas in February, 2004.

15.     Troy received favorable reviews and orders to purchase the M.R.F. at the 2004 SHOT Show.  Troy then asked Samson Mfg. to begin production of the M.R.F.

16.     In April 2004, Samson manufactured and delivered the first seven (7) M.R.F.s to Troy.

17.     On May 12, 2004, Troy entered into a purchase order agreement with Samson, whereby Samson agreed to manufacture 200 M.R.F.s for Troy Ind. ("M.R.F. Purchase Order Agreement").  Troy Ind. oversaw the manufacturing, visiting Samson Mfg. frequently to oversee the manufacturing process to ensure the M.R.F.s would be manufactured to specifications.

18.     On November 15, 2004, Troy terminated its relationship with Samson due to problems with over-billing, late delivery of products, and quality of final products.

19.     Subsequent to the termination of the relationship between Troy and Samson Mfg., Samson Mfg. began selling and offering to sell handguards under its own name, calling the products the "M.R.F.S.", short for Modular Rail Forend Samson.

20.     Samson Mfg. continues to sell and offer for sale handguards.

21.     On January 13, 2005, Troy Ind. filed a Verified Complaint against Mr. Samson and Samson Mfg. in Suffolk Superior Court, styled as *Troy Industries, Inc.   v. Samson Manufacturing Corporation and Scott A. Samson*, Civil Action No. 05-0146-BLS2 (the "State Court Case") for, among other things, Samson's violation of the Confidentiality Agreement with Troy Ind. and theft of trade secrets from Troy Ind.  A copy of the Verified Complaint is attached as Exhibit 3.

22.     On February 11, 2005, Mr. Troy filed a provisional patent application, Prov. App. No. 60/652,035, relating to the M.R.F. handguard Mr. Troy had invented.

23.     Unbeknownst to Troy Ind. at the time, on January 18, 2005 Mr. Samson filed a provisional application, Prov. App. No. 60/644,890 (a copy of which is attached hereto as Exhibit 4), directed to handguards.  Samson attached to this application confidential information of Troy Ind., including the following: (1) photographs showing all of the parts to the Troy M.R.F. (attached to the application as Figures 1-4); (2)  an extrusion drawing made by Leed Himmel Industries, Inc., showing the end view of the upper handguard (attached to the application as Figure 5) that was paid for by Troy Ind. and that on its face identifies Troy Ind. as the owner of the drawing; and (3) six manufacturing drawings of the Troy M.R.F. prepared for Troy Ind. by Robert Conley and paid for by Troy Ind., which showed Troy's clamping assembly, the clamping assembly installed around the barrel nut, perspective views of the handguard with the clamping assembly installed, the retention pin, the spring for the retention pin, and the standard barrel nut (attached to the application as Figures 6-12).  On information and belief, Samson Mfg. filed the provisional application in response to Troy having filed the State Court Case.

24.     On February 10, 2006, Mr. Troy filed a utility patent application, Appl. No. 11/351,822, which claimed priority to his earlier '035 provisional application.  This utility application issued as U.S. Patent No. 7,216, 451 (the "'451 Patent) on May 15, 2007.  A copy of the '451 Patent is attached as Exhibit 5.

25.     Meanwhile, on January 6, 2006, Samson filed a utility patent application, Appl. No. 11/32,665 (the "'665 Application"), claiming priority to its earlier '890 provisional application.

26.     On June 14, 2007, while discussing the admissibility of Mr. Samson's '665 Application in the State Court Case, Mr. Samson's patent attorney, Stephen J. Holmes of Barlow, Josephs & Holmes, Ltd., Providence RI, stated for the record that "[i]n Mr. Samson's ['665] application, he makes a claim **only to the spring-loaded latch mechanism**, and there is additional disclosure in the provisional that he makes no claim to in the full utility.  That additional disclosure is meant as background and to put the context of the latch in context with the invention."  *See* June 14, Trial Transcript (a copy of which is attached as Exhibit 6) at 4-7:9-15) (emphasis added).  Mr. Holmes goes on to represent "what Scott [Samson] has claimed is a forend rail assembly, that includes that specific latch.  ***Not the rail assembly itself***, but the rail end assembly with a latch."  *See id*. at 4-23:24 – 4-24:3 (emphasis added).

27.     Following a two-week trial, in which the jury heard evidence relating to the facts identified in paragraphs 10 to 25 above, on June 21, 2007, the jury in the State Court Case returned a verdict (attached hereto as Exhibit 7) in which it determined that Samson breached the Confidentiality Agreement with Troy Ind. by "using trade secrets or confidential business information that Troy [Ind.] provided after entering into the Confidentiality Agreement to manufacture the Modular Forend Rail ("MRF")," and awarded Troy Ind. $499,500.00 in damages.

28.     On June 25, 2007, the Suffolk Superior Court permanently enjoined Mr. Samson and Samson Mfg. from manufacturing, contracting with others to manufacture for sale, soliciting, advertising, accepting orders for sale, or assisting any third party in the design or manufacture of the Modular Rail Forend Samson of "any other Modular Rail Forend… that is (a) substantially similar in design to the Modular Rail Forend… presently sold by Troy, and (b) whose design is derived in significant part from confidential information or trade secrets provided to Samson under the Confidentiality Agreement".

29.     On August 2, 2007, the Trial Court entered a judgment in favor of Troy which provides:   "The plaintiff Troy Industries, Inc. shall recover of the defendant Samson Manufacturing Corporation the sum of $505,000 . . . in addition, the plaintiff . . . having prevailed on its claim of a violation of G.L. c. 93A, § 11, shall recover from the defendant . . . reasonable attorney's fees on the sum of $136,000, plus $16,004.92 in costs, for a total of $152,000.82."   With statutory postjudgment interest, the value of the judgment now exceeds $932,940.00 (the amount of the $657,000 judgment, plus post-judgment statutory interest of $275,940.00).

30.     On August 22, 2007, Samson filed a Request for Interference between claims 1-13 in his '665 Application and claims 3-5, 7-9 and 12-13 of Troy's '451 Patent.

31.     U.S. Patent No. 7,707,762 (the "'762 Patent"), titled "Modular Integrated Rail Assembly" and listing Richard E. Swan as the sole inventor, issued on May 4, 2010.

32.     On information and belief, A.R.M.S. is the sole owner of and has full right, title and interest in the '762 Patent.

33.     The '762 patent issued from U.S. Application Serial No. 11/296,099 (the "'099 Application"), which was filed on December 7, 2005.   The '762 patent purports to be a continuation-in-part of application No. 29.237,440, filed on August 31, 2005, now U.S. Des. 544,564, and to be based on Provisional Application No. 60/641,649, filed on January 5, 2005.

34.     On August 22, 2007, the same day that Samson Mfg. filed its request for interference, and, upon information and belief, acting in concert with Samson Manufacturing, Richard Swan filed his own request for interference between claims 1-18 and 28-32 of his '099 Application and claims 1, 2, 6, 10 and 11 of the '451 Patent.

35.     The same attorney, Stephen J. Holmes of Barlow, Josephs & Holmes, Ltd., signed both Samson's and A.R.M.S.' requests for interference.

36.     On information and belief, in the fall of 2007, Samson Manufacturing and A.R.M.S. entered into a Common Interest Agreement and/or a Joint Defense Agreement.

37.     On information and belief, Samson Manufacturing is a party to one or more patent license agreements with A.R.M.S. and/or Swan Industries, Inc., beginning in 2005.  Samson Manufacturing is a party to a patent license agreements with Swan Industries, Inc., executed in 2007 (a copy of which is attached as Exhibit 8), which references an earlier agreement between the two.  Upon information and belief, Swan Industries, Inc. is a Massachusetts corporation having a principal place of business at 230 W. Center Street, West Bridgewater, MA 02379, colocated with A.R.M.S., and of which Richard Swan is the President and Director.

38.     On June 4, 2009, the United States Patent and Trademark Office ("USPTO") declared an interference, Patent Interference No. 105,698 (the "'698 interference"), between claims 1-13 of Samson's application and claims 1-13 of Troy's issued patent.

39.     Troy sought leave to move to have A.R.M.S.' '099 Application included in the interference between Samson and Troy.  On August 7, 2009, the Board issued an order denying Troy leave to file such a motion.  *See* Order – Priority Times – Br. R.104(c) (Paper 20) (attached hereto as Exhibit 9).

40.     Samson Mfg. moved from relief from judgment in the State Court Case on December 22, 2010.  In its motion, Samson Mfg. (for the first time) asserted that Richard Swan, rather than Mr. Samson, invented the handguard that is the subject of the parties' patent applications.  The Superior Court judge denied the motion and found that "[i]t strains credulity to suggest that Samson realized, only after the [A.R.M.S. v. Troy] trial, he had *not* in fact invented

the handguard, and should not have so testified at the June 2007 [State Court Case] trial." *See* Memorandum of Decision and Order on Defendants' Motion for Relief from Judgment Dated August 13, 2007, Pursuant to Mass R. Civ. P. 60(b)(5) and (6), attached hereto as Exhibit 10, at 2 (emphasis original).

41.     On January 6, 2011, the Board of Patent Appeals and Interferences ("BPAI") of the USPTO found that Troy, the Junior Party, had not met the burden of proof in proving its case for priority and ordered claims 1-13 of the '451 Patent cancelled.  The BPAI reached its conclusion without consideration of, *inter alia*, Mr. Samson's subsequent declaration and briefing the State Court Case in which he disavowed having invented the subject matter of the '665 Application.

## COUNT I

## DETERMINATION OF PRIORITY UNDER 35 U.S.C. § 146 AGAINST SAMSON MFG.

42.     Plaintiff restates and incorporate paragraphs 1-41 of this Complaint as if set forth fully herein.

43.     Mr. Troy is the owner of U.S. Patent No. 7,216,451.

44.     Samson Mfg.'s Application No.  11/32,665 is an interfering application pursuant to 35 U.S.C. §§ 135(a) and 146.

45.     As declared by the BPAI, the claims that interfere between Samson and Troy are claims 1-13 of Samson's '665 application and claims 1-13 of Troy's '451 patent.

46.     Mr. Troy was the first to invent and reduce to practice the invention that is the subject matter of the '451 Patent and the '665 Application.

47.     Mr. Samson did not invent the subject matter of the '665 Application, but instead derived it from the invention of Mr. Troy.

48.     Mr. Samson's actions in reducing the invention to practice were undertaken at the request of and under the direction of Mr. Troy and inured to Mr. Troy's benefit.

49.     On January 6, 2011, the BPAI issued a decision denying Troy's motion for priority.

50.     As the owner of U.S. Patent No. 7,216,451, Mr. Troy, pursuant to 35 U.S.C. §§ 135(a) and 146, is requesting relief against Samson Mfg. that the Court declare that Mr. Troy has priority of invention of the subject matter of claims 1-13 of the '451 patent.

## COUNT II

### DETERMINATION OF PRIORITY UNDER 35 U.S.C. § 291
### AGAINST A.R.M.S.

51.     Plaintiff restates and incorporate paragraphs 1-50 of this Complaint as if set forth fully herein.

52.     Mr. Troy is the owner of U.S. Patent No. 7,216,451.

53.     A.R.M.S.' U.S Patent No.7,707,762 is an interfering patent pursuant to 35 U.S.C. § 291.

54.     As the owner of U.S. Patent No. 7,216,451, Mr. Troy is seeks relief pursuant to 35 U.S.C. § 291 that the Court declare that Mr. Troy has priority of invention of the subject matter of claims 1-13 of the '451 patent and that U.S. Patent No. 7,707,762 is invalid.

## COUNT III

### PATENT INFRINGEMENT AGAINST SAMSON

55.    Plaintiff restates and incorporate paragraphs 1-54 of this Complaint as if set forth fully herein.

56.    Mr. Troy is the owner of U.S. Patent No. 7,216,451, with the exclusive right to sue for past, present and future infringement thereof.

57.    Samson is making, using, selling and/or offering for sale handguard products, including but not limited to Samson's "Star-C" Tactical Accessory Rail System, that directly infringe the '451 Patent pursuant to 35 U.S.C. § 271 *et. seq.*

58.    Samson is indirectly infringing the '451 Patent by supplying infringing devices to its customers with knowledge of the '451 Patent, as well as supplying instructions to its customers on attaching handguard products to weapons such that the customers directly infringe the '451 Patent.

59.    Samson's infringement of the '451 Patent has been knowing, deliberate and willful.

60.    Samson's infringement of the '451 patent is causing Troy reparable and irreparable harm.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff request that this Court grant the following relief, as well as any other relief the Court may deem proper:

a.    declare that the '665 Application is an interfering application pursuant to 35 U.S.C. §§ 135(a) and 146 and declare that claims 1-13 of the '665 Application are not patentable to Samson pursuant to 35 U.S.C. §§ 102 (f) and (g);

b.    *de novo* consideration of the '698 interference record, if introduced, and supplemental evidence adduced by way of additional discovery regarding issues of conception,

reduction to practice, diligence, and derivation;

c.      reversal of all portions of the Board's decisions or judgment adverse to Mr. Troy;

d.      declare that Mr. Samson did not invent the subject matter of the '665 Application, but instead derived it from Mr. Troy;

e.      declare that Mr. Samson's actions in reducing the invention to practice were undertaken at the request of  and under the direction of Mr. Troy and inured to Mr. Troy's benefit;

f.      award priority of subject matter of the count to Mr. Troy;

g.      an entry of judgment for Mr. Troy and against Mr. Samson in the '698 interference;

h.      remand the '665 Application to the USPTO with instructions that proceedings on the '665 Application are terminated.

i.      declare that Mr. Troy has priority of invention of the subject matter defined by claims 1-13 of the '451 Patent over Samson and A.R.M.S.;

j.      declare that the  '762 Patent is invalid;

k.      enter judgment in favor of Troy determining that Samson infringes U.S. Patent No. 7,216,451 in violation of 35 U.S.C. §271 *et seq.*;

l.      permanently enjoin Samson, its officers, agents, employees and representative, and all those controlled by or acting in concert or privity with them, from infringing U.S. Patent No. 7,216,451;

m.      award Troy monetary damages for patent infringement;

n.      award Troy treble damages and its attorneys' fees for willful infringement of U.S. Patent No. 7,216,451;

o.      a declaration that this is an exceptional case;

p.      award Plaintiff its attorneys' fees and costs in this action; and

q.      grant to Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:  March 7, 2011                    Respectfully submitted,

                                         STEPHEN P. TROY, JR.,

                                         By their Attorneys

                                          /s/  Thomas P. McNulty
                                         Thomas P. McNulty (BBO No. 654564)
                                         Ann Lamport Hammitte (BBO No. 553263)
                                         LANDO & ANASTASI, LLP
                                         Riverfront Office Park
                                         One Main Street, 11th Floor
                                         Cambridge, MA  02142
                                         Telephone:  (617) 395-7000
                                         Facsimile:  (617) 395-7070
                                         emailservice@LL-A.com


                                         Damian R. LaPlaca (BBO No. 551369)
                                         Sarah K. Willey (BBO No. 633504)
                                         DONOVAN HATEM, LLP
                                         World Trade Center East
                                         Two Seaport Lane
                                         Boston MA  02210
                                         Telephone:  (617) 406-4500
                                         Facsimile:   (617) 406-4501