UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                )
STEPHEN P. TROY, JR.,           )
                                )
                   Plaintiff,   )
                                )
          v.                    )     CIVIL ACTION
                                )     NO. 11-10384-WGY
SAMSON MANUFACTURING CORPORATION )
                                )
                   Defendant.   )
                                )
```

MEMORANDUM & ORDER

YOUNG, D.J.                                    April 30, 2013

## I.  INTRODUCTION

The plaintiff, Stephen P. Troy, Jr. ("Troy"), brings this action pursuant to 35 U.S.C. section 146 ("Section 146"), seeking judicial review of a final decision and order (the "Decision") of the Board of Patent Appeals and Interferences (the "Board") of the United States Patent and Trademark Office (the "PTO") in Patent Interference No. 105,698.  The interference proceeding before the Board involved a dispute over priority between U.S. Patent No. 7,216,451 (the "'451 Patent") and U.S. Patent Application No. 11/326,665 (the "'665 Application").  The interfering subject matter under the '451 Patent and the '665 Application related to a modular handguard rail for a firearm. The Board held that Troy failed to establish the priority of the '451 Patent over the '665 Application.  Under Count I of the

1

complaint, Troy requests that this Court review the Board's
decision as to the priority of invention.

**A.    Background**

**1.    The Invention**

Troy alleges that, in January 2003, he began designing and
developing a firearm component, named the Modular Rail Forend
(the "Troy Rail"), to be retrofitted to the M16 rifle and
carbine.  Compl. ¶ 10, ECF No. 1.  The Troy Rail is designed to
be "free-floating," meaning that it does not touch the barrel of
the firearm.  Id. (internal quotation marks omitted).  This is
accomplished by affixing the rail to the barrel nut of the
firearm via a clamp that screws into the upper piece and by
attaching the handguard to the barrel nut.  Id.

Troy is the inventor and owner of the '451 Patent, which was
issued on May 15, 2007.  R. Patent Interference No. 105,698 (SCM)
("Interference R.") 3350.[1]  Scott W. Samson ("Samson") filed the
'665 Application on January 6, 2006.[2]  See id. at 884.  The Board

---

[1] Notice of the manual filing of the interference record was
provided on February 15, 2012.  Partially Assented-To Mot. Def.
Samson Mfg. Corp. Admit Interference R. Patent Interference No.
105,698, Ex. B, R. Patent Interference No. 105,698 (SCM), ECF No.
35-2.  The interference record features somewhat unusual
pagination.  (For example, page 1 of the interference record
carries the label "IR000001.").  In the interest of simplicity
and clarity, references to the interference record will omit the
"IR" designation and any extraneous numerals.

[2] Samson Manufacturing Corporation ("Samson Manufacturing"),
the assignee of the '665 Application, is the real party in
interest.  Id. at 98.  For the purposes of this memorandum,

determined that Claim 3 of the '451 Patent and Claim 6 of the

'665 Application are directed to the same subject matter.   Id. at

881.   Claim 3 states that the modular hand grip under the '451

Patent is comprised of:

> [A]n upper portion having a forward end, a
> rearward end, an inner surface and an outer surface,
> the rearward end is configured to engage a top portion
> of a barrel nut;
>
> lug rails project from the inner surface of upper
> portion at opposing sides and proximate edges thereof,
> the lug rails extend longitudinally from proximate the
> forward end to a position proximate the rearward end
> and include a plurality of gaps formed therein;
>
> a clamp assembly for engaging a bottom portion of
> the barrel nut is attached to the rearward end of the
> upper portion;
>
> a lower portion having a top section and opposing
> side sections extending therefrom and each terminating
> at an edge, a plurality of spaced apart lugs extending
> from each edge and receivable in the gaps in the lug
> rails of the upper portion and translatable in one of a
> forward direction and a rearward direction positioning
> the lugs under the lug rails; and
>
> a detent assembly carried by the clamp assembly
> for engaging the lower portion.

Id. at 3357-58; see also id. at 3352 fig.4 (providing an

illustration of the modular hand grip from an exploded

perspective).

### 2.   Proceedings Before the Board

Troy initiated interference proceedings against Samson and

---

however, all discussion concerning Samson Manufacturing will be
made with reference to Samson himself.

Kenneth Lankarge by filing a motion with the Board asserting priority of invention. Id. at 880-81. Troy was declared the "junior party" in the interference because he filed a provisional patent application for the '451 Patent on February 10, 2006, thirty-five days after the date on which the '665 Application had been filed. See id. at 883-84. After accounting for the filings of earlier applications by both parties, the Board deemed Troy's earliest constructive reduction-to-practice date to be February 11, 2005, and Samson's earliest constructive reduction-to-practice date to be January 18, 2005 (the "Critical Date"). Id. at 884; see also id. at 885. As the junior party, Troy was required to demonstrate priority of invention by a preponderance of the evidence. Id. at 885; see 37 C.F.R § 41.207(a)(2).

The Board issued a decision on Troy's motion on January 6, 2011. Interference R. at 880. In order to establish priority, Troy carried the burden of showing an actual reduction to practice of an embodiment of the invention prior to the Critical Date. See id. at 885. The Board determined that Troy failed to demonstrate by a preponderance of the evidence an actual reduction to practice of every element of Claim 3 prior to the Critical Date. See id. at 885-93.

Since an actual reduction to practice had not been established, Troy had to show that he earlier conceived of the invention in order to prove inurement or derivation. Id. at 894.

Troy sought to demonstrate that he conceived of the invention on any of five separate occasions: April 2003, June 2003, July 2003, November 2003, and January 2004.  See id. at 894-902.  The Board concluded that the evidence, taken either individually for the various alleged dates of conception or collectively, did not account for all the elements of Claim 3.  Id. at 902. Consequently, the Board determined that "Troy ha[d] not sufficiently demonstrated by a preponderance of the evidence a prior conception of the [invention]."  Id.

The Board next turned to the question of whether Samson's actions could properly be said to have inured to Troy's benefit. See id. at 902-04.  Troy alleged that he communicated his conception to Samson, that Samson had signed a confidentiality agreement, and that all actions taken by Samson between April 9, 2003, and February 2004 relating to the subject matter of Claim 3 inured to the benefit of Troy.  Id. at 902-03.  The Board, however, disagreed, determining that Troy had not sufficiently demonstrated that Samson had performed any act of inurement.  Id. at 904.

Finally, the Board briefly entertained Troy's derivation argument but ultimately found that Troy's failure to establish conception of the invention prevented him from establishing that Samson derived the subject matter of Claim 3.  Id.

## II.  ANALYSIS

5

A.    **Standard of Review and Admission of Further Evidence**

A party that is dissatisfied with a decision of the Board may commence a civil action in district court.  35 U.S.C. § 146. On motion of either party, the record from the Board proceedings may be admitted into evidence "without prejudice to the right of the parties to take further testimony." Id.  This renders the district court proceeding in a Section 146 action a strange "hybrid of an appeal and a trial de novo." AlphaVax, Inc. v. Novartis Vaccines & Diagnostics, Inc., 719 F. Supp. 2d 156, 162 (D. Mass. 2010) (quoting Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1345 (Fed. Cir. 2000)) (internal quotation mark omitted).  The Court must review the Board's conclusions of law de novo, but the underlying factual determinations are reviewed for clear error. Abbott GmbH & Co. KG v. Yeda Research & Dev., Co., 576 F. Supp. 2d 44, 49 (D.D.C. 2008) (citing Winner, 202 F.3d at 1348).  Should the Court receive new evidence on matters that were before the Board, it must make factual findings de novo, at least with respect to the issues on which the new evidence is taken. See Conservolite, Inc. v. Widmayer, 21 F.3d 1098, 1102 (Fed. Cir. 1994).  If neither party introduces new evidence, however, then the Court must review the Board's factual findings under the familiar substantial evidence test for administrative proceedings.  See Mazzari v. Rogan, 323 F.3d 1000, 1005 (Fed. Cir. 2003).

Troy seeks to introduce six affidavits as new evidence in order to shore up evidentiary gaps in the record of the Board proceeding.   Samson argues that the Court ought not consider the newly proffered evidence because it was both known and available to Troy at the time of the Board proceeding.   Trial Br. Def. Samson Mfg. Corp. 4, ECF No. 51.   Troy contends, however, that this Court is required to admit the newly proffered evidence pursuant to Section 146.   Mem. Law Stephen P. Troy, Jr. Supp. Count I ("Troy's Mem.") 3, ECF No. 50.   Although Section 146 allows the Court to admit new evidence from witnesses who had not formerly been before the Board "if equity so requires," Cell Genesys, Inc. v. Applied Research Sys. ARS Holding, N.V., 499 F. Supp. 2d 59, 69 (D. Mass. 2007) (Wolf, J.) (citing Conservolite, 21 F.3d at 1102), the statute does not prescribe when it is appropriate to do so.   Determining what equity requires here is crucial.

In consonance with Federal Circuit precedent, this Court, as well as other judges in this district, have previously stated that a Section 146 action does not guarantee the admission of new evidence and live testimony.   See, e.g., AlphaVax, 719 F. Supp. 2d at 163 (holding that the plaintiff "ought not be allowed a chance to 'do over' what it has chosen not to do before the Board"); Invitrogen Corp. v. President & Fellows of Harvard Coll., 578 F. Supp. 2d 248, 255 (D. Mass. 2008) (Gorton, J.)

7

(noting that the plaintiff would not be afforded the opportunity to supplement the record with evidence available but not adequately presented to the Board); Cell Genesys, 499 F. Supp. 2d at 74-76 (stating that the court ought admit new evidence only to enhance the accuracy of credibility determinations or to present evidence that was unavailable at the time of the Board's proceedings).

Recently, however, the Federal Circuit has treated the admission of new evidence in a Section 146 proceeding more generously.  See Streck, Inc. v. Research & Diagnostic Sys., Inc., 659 F.3d 1186, 1190 (Fed. Cir. 2011) (noting that "[n]either statute nor precedent" requires newly proffered evidence to conflict with the record before the Board in order to be admissible).  Furthermore, in a still more recent decision, the Supreme Court affirmed "that Congress intended that applicants would be free to introduce new evidence in § 145 proceedings subject only to . . . the Federal Rules of Evidence and the Federal Rules of Civil Procedure, even if the applicant had no justification for failing to present the evidence to the PTO."[3]  Kappos v. Hyatt, 132 S. Ct. 1690, 1695 (2012) (quoting Hyatt v. Kappos, 625 F.3d 1320, 1331 (Fed. Cir. 2010) (en banc),

---

[3] The Federal Circuit has recognized that 35 U.S.C. sections 145 and 146 are cognate provisions "that are to be treated similarly."  Streck, 659 F.3d at 1190 n.2 (quoting Hyatt, 625 F.3d at 1330 n.2).

aff'd, 132 S. Ct. 1690) (internal quotation marks omitted); see also id. at 1700-01.  Any newly proffered evidence is limited, however, to the issues and legal theories that were raised before the Board.  Hyatt, 625 F.3d at 1335 (citing Conservolite, 21 F.3d at 1102) (noting that the Federal Circuit's ruling in Hyatt does not disturb its earlier principle that "issues (and evidence relating to new issues) that were not raised in the Patent Office proceedings generally may not be raised in a § 145 proceeding").

Accordingly, the Court must consider Troy's newly proffered evidence, as its availability vel non at the time of the Board proceedings does not preclude its admission.[4]  The Court will not, however, consider any evidence related to issues not raised before the Board.[5]

## B.   Priority of Invention

Priority of invention is granted "to the first party to reduce an invention to practice unless the other party can show

---

[4] Board proceedings are thus reduced to "trial runs," which a dissatisfied party may "do over" in district court.  While this makes little practical sense and flies in the face of the usual tenets of administrative and civil procedure -- which uniformly seek to narrow the issues for resolution -- I am but a district judge, and "Theirs not to reason why, / Theirs but to do and die."  Alfred, Lord Tennyson, The Charge of the Light Brigade (1854), in The Complete Poetical Works of Tennyson 226, 226 (W. J. Rolfe ed., Cambridge, Houghton, Mifflin & Co. 1898).

[5] For a full discussion of the jurisprudential underpinnings of this rule, see Tory A. Weigand, Raise or Lose: Appellate Discretion and Principled Decision-Making, 17 Suffolk J. Trial & App. Advoc. 179 (2012).

that it was the first to conceive of the invention and that it exercised reasonable diligence in later reducing that invention to practice." Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1169 (Fed. Cir. 2006) (quoting Cooper v. Goldfarb, 154 F.3d 1321, 1327 (Fed. Cir. 1998)) (internal quotation mark omitted); see also 35 U.S.C. § 102(g)(2).  The determination of priority is matter of law based on subsidiary factual findings.  Price v. Symsek, 988 F.2d 1187, 1190 (Fed. Cir. 1993).

### 1.   Burden of Proof

The Board deemed Troy the junior party in the interference proceeding because Troy's provisional patent application was filed later than Samson's provisional patent application.[6]  See Interference R. at 883-84.  The effective filing date of a provisional patent application serves both as "conception and constructive reduction to practice of the subject matter described in the application."  Hyatt v. Boone, 146 F.3d 1348, 1352 (Fed. Cir. 1998) (citing Yasuko Kawai v. Metlesics, 480 F.2d 880, 885 (C.C.P.A. 1973)).  Having filed the first provisional patent application, Samson could rely on the content of the application without providing evidence of conception or an actual reduction to practice.  Conversely, Troy bore the burden of

---

[6] Samson filed a provisional patent application (Prov. App. No. 60/644,890) on January 18, 2005, and Troy filed his provisional patent application (Prov. App. No. 60/652,035) on February 11, 2005.  Compl. ¶¶ 22-23.

proving priority of invention by a preponderance of the evidence. See Brown v. Barbacid, 276 F.3d 1327, 1331-32 (Fed. Cir. 2002).

Troy argues that the Board misplaced the burden of proof and that Samson should have been deemed the junior party in the interference proceeding.  Troy's Mem. 6.  Troy claims that the '665 Application was filed using only confidential proprietary drawings and images of the invention belonging to Troy.  Id. at 6-7.  Troy further argues that Samson should have been denied senior party status as a result of its inequitable conduct.  See id. at 7.

Samson claims that Troy has waived his right to raise this issue before the Court, arguing that Troy was required to challenge the Board's determination of priority by filing a substantive motion in the interference proceeding but failed to do so.  Resp. Def. Samson Mfg. Corp. Pl.'s Supplemental Mem. 6, ECF No. 55.  The regulations governing interference proceedings before the Board provide the mechanism for challenging priority determinations, listing the grounds upon which a substantive motion may be filed.  See 37 C.F.R. § 41.121(a)(1).  Furthermore, a party to an interference generally may not raise issues in a Section 146 proceeding that were not previously raised before the Board.  See Boston Scientific Scimed, Inc. v. Medtronic Vascular, Inc., 497 F.3d 1293, 1298 (Fed. Cir. 2007); Conservolite, 21 F.3d at 1102; cf. Hyatt, 625 F.3d at 1335.

11

For an issue to be considered adequately raised before the Board, "the issue should have been raised as specified in the PTO's interference rules." Conservolite, 21 F.3d at 1102. Furthermore, an issue may be deemed to have been properly raised only "if the record clearly demonstrates that it was placed before the examiner-in-chief and one or more parties insisted that the issue be resolved in the interference." Id. The Court may, however, exercise its discretion to adjudicate new issues not raised before the Board under the appropriate circumstances. Id. Such circumstances include "an intervening change in the law, the presence of a new issue, or the admission of other evidence deserving of a response or further elaboration." Id.

Troy contends that he did challenge the Board's priority determination by seeking leave to file a motion for judgment of inequitable conduct, which the Board denied. Further Mem. Law Stephen P. Troy, Jr. Supp. Count I ("Troy's Further Mem.") 10, ECF No. 59; see also Troy's Further Mem., Ex. A, Troy Motions List, ECF No. 59-1. Troy has failed, however, to articulate where in the record he actually presented arguments to the Board regarding the alleged inequitable conduct of Samson. Troy only directs the Court to a line item on a proposed motion list to prove that he raised the issue before the Board. See Troy's Further Mem. 10. Without corroboration, the Court cannot speculate as to the content of a motion that was proposed but

never filed.

Thus, it is not apparent from the record that the Board had the occasion to address this issue.  Moreover, Troy has failed to demonstrate that this case presents an appropriate circumstance for the Court to exercise its discretion to consider a new legal issue.  Accordingly, the Court declines to exercise its discretion to adjudicate this new issue.

### 2.    Actual Reduction to Practice

As the junior party in the interference proceeding, Troy bears the burden in the present Section 146 action of establishing priority of invention.  See Streck, 659 F.3d at 1191 (stating that because "a § 146 action is a new civil proceeding subject to de novo determination," the burden of proof rests with the junior party).  Troy can establish priority by showing an actual reduction to practice of the invention that occurred prior to Samson's constructive reduction to practice on January 18, 2005.  See Eaton v. Evans, 204 F.3d 1094, 1097 (Fed. Cir. 2000). In order to establish an actual reduction to practice, Troy must demonstrate that (1) he has "constructed an embodiment or performed a process" to meet every element of Claim 3; and (2) "the embodiment or process operated for its intended purpose." Id.; accord Cooper, 154 F.3d at 1328.

Troy claims that an actual reduction to practice occurred between January and February 2004.  See Interference R. at 222.

13

The Board's decision explains that Troy relied heavily on his own testimony and failed to provide sufficient corroborating evidence to establish an actual reduction to practice. Id. at 893.  In the present action, Troy introduced a new affidavit to supplement the prior testimony that he submitted to the Board. See Aff. Stephen P. Troy, Jr. ("Troy Aff."), ECF No. 49.  Without adequate corroboration, however, Troy's new testimony remains insufficient to prove an actual reduction to practice. See Price, 988 F.2d at 1194 (declaring that corroboration is required to prove priority of invention and derivation); AlphaVax, 719 F. Supp. 2d at 164 (citing Singh v. Brake, 222 F.3d 1362, 1367 (Fed. Cir. 2000)) (noting that the declaration of an inventor is "insufficient as a matter of law to establish priority"); Invitrogen, 578 F. Supp. 2d at 256 (observing that the Board "may not rely on the inventor's own declaration to establish facts regarding [an actual reduction to practice]").  Troy's newly proffered affidavit does little to fill the evidentiary gaps in the record and is insufficient to establish an actual reduction to practice prior to February 2004.

Troy also relies on various undated photographs of the Troy Rail to corroborate his testimony that an actual reduction to practice occurred between January and February 2004.  See Interference R. at 886-89, 2896-97.  Despite the resemblance between the photographs and the subject matter of Claim 3, Troy

did not account for all of the five very specific elements contained therein.  See id. at 886-89.  Even if all five elements were present, the photographs -- being undated -- are insufficient to corroborate Troy's testimony that a reduction to practice occurred prior to the Critical Date.

Additionally, Troy introduced into evidence an invoice, dated February 2, 2004, for orders of the Troy Rail taken during the annual Shooting Hunting and Outdoor Trade Show (the "SHOT Show").  See id. at 2904; see also Joint Pretrial Mem. 4, 17, ECF No. 43.  The Board correctly concluded that the invoice had little significance with respect to accounting for the five elements of Claim 3.  See Interference R. at 891.  The invoice merely lists the orders placed for the Troy Rail products without describing in detail their specific components.  See id. at 2904. This does not establish what Troy asserts: that the invention described in Claim 3 was sold during the SHOT Show.

Furthermore, Troy cites a portion of Samson's prior sworn testimony in a state court action that confirms that Samson accompanied Troy to the SHOT Show in order to support Troy's efforts.  See id. at 890; see also id. at 2970.  The Board rightly determined that Samson's testimony showed only that Samson attended the SHOT Show with Troy; it did not serve to corroborate an actual reduction to practice, as Troy suggests. See id. at 892.

15

The Board also considered a receipt from Applied Light, Inc. ("Applied Light") for laser engraving services for several Troy Rail prototypes and accompanying photographs. Id. at 890; see also id. at 2899, 2901-02. The Board justly concluded that the photographs failed to identify every element of Claim 3. Id. at 890-91. Moreover, the receipt merely describes the laser services performed and not the various parts of the Troy Rail prototype. Id. In order to supplement the record before the Board, Troy submitted to this Court the affidavit of Preston Macy ("Macy"), the General Manager of Applied Light. Aff. Preston Macy, ECF No. 44. Macy confirms that Applied Light performed laser engraving services on myriad Troy Rail prototypes, id. ¶ 3, but that Troy had only two particular parts of the rail engraved: "a one sided lower handguard rail, and a three sided upper handguard rail," id. ¶ 4. This new evidence, even considered in tandem with the entirety of the record, does not establish all five elements of Claim 3.

Lastly, Troy relies on the affidavit of Cass Chin ("Chin"), the manager of a weapons and weapons accessories review website, and the deposition of Robert Conley ("Conley"), who prepared manufacture drawings for Troy's weapons manufacturing firm, Troy Industries, Inc. ("Troy Industries"), to prove that an actual reduction to practice occurred no later than July 2004. See Aff. Cass Chin, ECF No. 48; Troy Aff. ¶¶ 85-93. The testimony of both

16

Chin and Conley concerns events that occurred after February 2004, the latest reduction-to-practice date claimed in the interference proceeding.  A party is generally precluded from raising issues or theories of law in a Section 146 proceeding that were not previously raised before the Board.  <u>Boston Scientific Scimed</u>, 497 F.3d at 1298 (stating that a party is precluded from advancing "new legal theories at the trial court level, even if the overarching legal issue was presented below"); <u>Conservolite</u>, 21 F.3d at 1102 ("While the expression '<u>de novo</u>' is often used to describe a § 146 action, the statute does not . . . state that new issues can freely be raised.").  Troy provides no justification for not raising the new reduction-to-practice date during the interference proceeding and is thus prohibited from doing so in this action.  <u>See</u> <u>Invitrogen</u>, 578 F. Supp. 2d at 253-55 (suggesting that the plaintiff may not raise a new reduction-to-practice date that was not presented to the Board).

On the basis of the record before the Board and the newly proffered evidence, Troy has not accounted for all five elements of Claim 3.  As a result, Troy has failed to establish that an actual reduction to practice occurred prior to February 2004.

### 3.   Conception

Troy's failure to establish an actual reduction to practice requires him to demonstrate that he conceived of the invention described in Claim 3 in order to prove inurement or derivation.

17

See Genentech, Inc. v. Chiron Corp., 220 F.3d 1345, 1354 (Fed. Cir. 2000); Price, 988 F.2d at 1190. "Conception is the formation, in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice." Cooper, 154 F.3d at 1327. Troy must prove possession of every feature recited in Claim 3 by a preponderance of the evidence in order to demonstrate conception. See Griffin v. Bertina, 285 F.3d 1029, 1032 (Fed Cir. 2002); Kridl v. McCormick, 105 F.3d 1446, 1449 (Fed. Cir. 1997). Furthermore, Troy may not rely solely on his own testimony; corroboration is required to establish conception. See University of Pittsburgh of the Commonwealth Sys. of Higher Educ. v. Hedrick, 573 F.3d 1290, 1298 (Fed. Cir. 2009).

Troy's earliest claimed corroborated date of conception of the subject matter of Claim 3 is April 2003. See Interference R. at 222. In addition, Troy proffered four alternative dates of conception to the Board: June 2003, July 2003, November 2003, and January 2004. Id. at 896-902.

First, to demonstrate conception in April 2003, Troy claims that he began working on design concepts and drawings of the Troy Rail in January 2003, see Troy Aff. ¶ 8, and that he offered in evidence a drawing of the Troy Rail, Interference R. at 2847, which he allegedly disclosed to Samson in April 2003 for the purposes of machining the product, see id. at 2838; Troy Aff. ¶

18

10.   The drawing, however, is undated and bears no indication of its creator.  Moreover, the drawing does not clearly depict lug rails, a clamp assembly, or a detent assembly, as required to establish conception.  <u>See</u> Interference R. at 2847.  Troy also relies on a confidentiality agreement signed by Samson prior to the beginning of their business relationship in order to show that he disclosed the Troy Rail concept to Samson in April 2003 with the expectation that Samson would maintain any information shared by Troy in confidence.  Troy's Mem. 5, 8-9.  The confidentiality agreement does not describe the specific work performed by Samson on behalf of Troy.  As the Board correctly determined, the confidentiality agreement merely provides that all documentation and confidential business information concerning the development of a handguard rail disclosed to Samson remains Troy Industries' property.  <u>See</u> Interference R. at 903.  It does not, however, set forth the specific elements of Claim 3; therefore, it is insufficient to corroborate Troy's assertion that the invention was conceived of and disclosed to Samson in April 2003.

Second, to show conception in June 2003, Troy relies on two computer-generated solid model images of the Troy Rail and the testimony of David Beaudet ("Beaudet"), who prepared the images after reportedly meeting with Troy in June or July 2003.  Troy's Mem. 10; <u>see also</u>, Interference R. at 1181, 1185.  Troy argues

19

that the images, corroborated by Beaudet's testimony, show four elements of Claim 3: the upper rail, the lower lug rail, a two-piece clamping assembly, and interrupted lug rails.  Troy's Mem. 11.  An analysis of the images and Beaudet's testimony shows they do not demonstrate the specific subject matter of Claim 3, which also requires a detent assembly, lug rails on the upper portion, and lugs spaced apart extending from each end of the lower portion.  Since proof of conception requires the inventor to show that he conceived of _every_ element of the invention, Troy has failed to prove conception by June 2003.  See _Kridl_, 105 F.3d at 1449.

Third, Troy relies on two emails sent from Troy to Samson in July 2003 to demonstrate conception of the clamp assembly in July 2003.  Troy's Mem. 11-12.  Troy also introduced the affidavit of Anthony William Lawrence ("Lawrence"), a seller of ergonomic rifle stocks, to supplement the record before the Board.  Aff. Anthony William Lawrence ("Lawrence Aff."), ECF No. 45.  The two emails and Lawrence's testimony describe the mechanism Troy intended to adopt as a clamping assembly for the Troy Rail.  See Interference R. at 2863-64, 2866; Lawrence Aff.  This evidence supplements Troy's previous showing of a clamp assembly for the June 2003 conception date but does not account for the remaining elements of Claim 3.  As a result, Troy has not demonstrated that he conceived of every element of Claim 3 by July 2003.

Fourth, to establish conception in November 2003, Troy submitted two drawings that illustrated improvements made to the Troy Rail concept between April and November 2003.  <u>See</u> Interference R. at 899, 2860-61.  The drawings, however, do not depict a detent assembly carried by a clamp assembly, lug rails on the upper portion, and lugs spaced apart extending from each end of the lower portion.  <u>See</u> <u>id.</u> at 2860-61.  Furthermore, the drawings are undated, and Troy has not corroborated his testimony that he created the drawings.  Consequently, the drawings are inadequate to establish conception in November 2003.

Lastly, Troy submitted two exhibits in order to demonstrate conception in January 2004.  The two exhibits detail an invoice for the purchase of an extrusion die necessary for manufacturing the Troy Rail and an extrusion print (which is a cross-sectional diagram of the Troy Rail).  <u>Id.</u> at 2868, 2870-92, 2894.  Neither the invoice nor the extrusion print have any accompanying explanations, and it is not evident that all the elements of Claim 3 are accounted for.  The extrusion print is a diagram of the cross-section of the Troy Rail and, therefore, the detent assembly carried by the clamp assembly is not demonstrated.  In order to cure this deficiency, Troy proffered the affidavit of John Chudzik, a head armorer for a police department, to corroborate Troy's testimony that he conceived of a spring detent assembly concept in January 2004.  <u>See</u> Aff. John Chudzik ¶¶ 5-11,

ECF No. 47.  Despite this new evidence, Troy has not demonstrated that several other elements of Claim 3 were conceived of by January 2004, including lug rails on the upper portion and spaced apart lugs extending from each end of the lower portion of the handguard.

Accordingly, this Court determines that Troy has failed to demonstrate that he conceived of all the elements of Claim 3 by a preponderance of the evidence on any of the asserted dates of conception.[7]

### 4.  Inurement

Troy argues that Samson's actions in reducing the invention to practice inured to the benefit of Troy as a result of the confidentiality agreement and business relationship between the parties.  Troy's Mem. 17.  "Inurement involves a claim by an inventor that, as a matter of law, the acts of another person should accrue to the benefit of the inventor."  Cooper, 154 F.3d

---

[7] The Court acknowledges, as it must, that Troy has proved (1) that Samson improperly submitted to the PTO as its own at least one drawing of Troy's and (2) that Samson violated a confidentiality agreement with Troy Industries in the course of developing its patented inventions, occasioning $499,500 in damages.  See Troy Indus., Inc. v. Samson Mfg. Corp., No. 09-P-1571, 2012 WL 931641, at *2 (Mass. App. Ct. Mar. 21, 2012). While these actions may constitute inequitable conduct by Samson, see generally Thomas F. Cotter, An Economic Analysis of Patent Law's Inequitable Conduct Doctrine, 53 Ariz. L. Rev. 735 (2011) -- a matter as to which this Court expresses no opinion -- neither action proves Troy conceived of all the elements of Claim 3 and timely reduced them to practice (the issue before the Board).

at 1331.   In order to demonstrate inurement, Troy must show that Samson was working either explicitly or implicitly at Troy's request.   See id.   Furthermore, the following three requirements must be satisfied: (1) "the inventor must have conceived of the invention"; (2) "the inventor must have had an expectation that the embodiment tested would work for the intended purpose of the invention"; and (3) "the inventor must have submitted the embodiment for testing for the intended purpose of the invention."   Genentech, 220 F.3d at 1354.

Troy claims Samson acted on its behalf because, after signing the confidentiality agreement, Troy "entered into two purchase orders with Samson whereby Samson agreed to machine the [Troy Rail]."   Troy's Mem. 17.   Troy's argument fails, however, because Troy has not shown that he conceived of the invention by a preponderance of the evidence, as required to establish inurement.   See Genentech, 220 F.3d at 1354.

### 5.   Derivation

Troy contends that he is entitled to judgment on the basis of derivation.   Troy's Mem. 18.   "A claim that a patentee derived an invention addresses originality" -- that is to say, derivation turns on the question of "who invented the subject matter of the count?"   Price, 988 F.2d at 1190.   Troy may show that Samson did not invent the subject matter of the '665 Application by establishing derivation.   See Brand v. Miller, 487 F.3d 862, 869

(Fed. Cir. 2007) ("A party may . . . assert that the patentee did not invent the patented invention by showing derivation."). To prove derivation, Troy must "establish prior conception of the claimed subject matter," id. (quoting Price, 988 F.2d at 1190) (internal quotation marks omitted), and show "communication of that conception to the patentee that is sufficient to enable [him] to construct and successfully operate the invention," id. at 869-70 (alteration in original) (quoting International Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1376 (Fed. Cir. 2004)) (internal quotation marks omitted).

As explained above, Troy has not sufficiently demonstrated prior conception of the invention by a preponderance of the evidence. As a result, Troy has failed to establish that Samson derived the subject matter of Claim 3.

### III. CONCLUSION

For the reasons stated above, the Court orders that judgment be entered AGAINST Troy upon Count I of the Complaint, ECF No. 1, and that the Board's order cancelling Claims 1-13 of U.S. Patent No. 7,216,451 be AFFIRMED.

**SO ORDERED.**

/s/William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE