# United States Court of Appeals
# for the Federal Circuit

———————————

**STEPHEN P. TROY, JR.,**
*Plaintiff-Appellant,*

**v.**

**SAMSON MANUFACTURING CORPORATION,**
*Defendant-Appellee.*

———————————

2013-1565

———————————

Appeal from the United States District Court for the District of Massachusetts in No. 11-CV-10384, Judge William G. Young.

———————————

Decided: July 11, 2014

———————————

DAMIAN R. LAPLACA, Nelson Kinder + Mosseau PC, of Boston, Massachusetts, argued for plaintiff-appellant.

LAURA L. CARROLL, Burns & Levinson LLP, of Boston, Massachusetts, argued for defendant-appellee. With her on the brief was ZACHARY R. GATES. Of counsel was HOWARD SUSSER.

ROBERT J. MCMANUS, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for amicus curiae. With him on the brief were NATHAN K. KELLEY, Solicitor, THOMAS W. KRAUSE,

Special Counsel for IP Litigation. Of counsel on the brief were STUART F. DELERY, Assistant Attorney General, MARK R. FREEMAN and SAMANTHA L. CHAIFETZ, Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

———————————

Before PROST, *Chief Judge*, BRYSON and MOORE, *Circuit Judges*.

MOORE, *Circuit Judge*.

Stephen P. Troy, Jr. appeals from the district court's judgment in a civil action under 35 U.S.C. § 146 and challenges the court's conclusion that the Board of Patent Appeals and Interferences (Board) properly cancelled the claims of U.S. Patent No. 7,216,451 ('451 patent) in an interference proceeding with Samson Manufacturing Corp. (Samson). Because the district court erred in refusing to consider evidence pertinent to the determination of priority, we *vacate* and *remand*.

## BACKGROUND

The Board declared an interference between Mr. Troy's '451 patent and Samson's U.S. Patent Application No. 11/326,665 ('665 application).[1] The '451 patent claims priority to a provisional application filed on February 11, 2005. The '665 application claims priority to a provisional application filed on January 18, 2005. Because the '665 application has an earlier priority date than the '451 patent, Samson was named the senior party. Mr. Troy's priority motion alleged reduction to practice in early February 2004, conception at several dates prior to February 2004, inurement, and derivation. Samson's priority motion alleged reduction to practice in late February or

———————————

[1] The '665 application recently issued as U.S. Patent No. 8,276,304.

early March 2004 and conception in early February 2004. The Board concluded that Mr. Troy failed to prove actual reduction to practice in February 2004, and also rejected Mr. Troy's claims of inurement and derivation because he did not establish prior conception. The Board therefore entered judgment against Mr. Troy and ordered all claims of the '451 patent cancelled.

Mr. Troy challenged the Board's decision in district court under § 146. Mr. Troy proffered new evidence of prior conception at the various conception dates he asserted at the Board and new evidence of actual reduction to practice in February 2004. He also introduced new evidence of actual reduction to practice in July 2004—the Chin affidavit and the Conley deposition testimony. Additionally, Mr. Troy argued Samson engaged in "inequitable conduct" by including in its provisional application confidential drawings that Samson misappropriated from Mr. Troy. Mr. Troy contended that he proved in state court that Samson misappropriated his company's trade secrets, which included the subject matter of the count. He argued that this state court finding of misappropriation established that Samson "derived its alleged invention from Troy." J.A. 4527; *see Troy Indus., Inc. v. Samson Mfg. Corp.*, 963 N.E.2d 777 (Table), 2012 WL 931641 (Mass. App. Ct. Mar. 21, 2012).

The district court affirmed the Board's order canceling all claims of Mr. Troy's patent. *Troy v. Samson Mfg. Corp.*, 942 F. Supp. 2d 189, 201 (D. Mass. 2013). After reviewing the record before the Board and some of the new evidence proffered by Mr. Troy, the district court concluded that Mr. Troy failed to carry his burden of showing prior conception or February 2004 reduction to practice. The court, however, refused to consider the Chin affidavit or the Conley deposition. It concluded that this evidence, which pertained to an alleged July 2004 reduction to practice, was barred because "[a] party is generally precluded from raising issues or theories of law in a

Section 146 proceeding that were not previously raised before the board." *Id.* at 198.  The court also rejected as a new issue Mr. Troy's argument that Samson used Mr. Troy's confidential proprietary drawings in its provisional application, which Troy alleged demonstrated Samson's inequitable conduct.  The district court concluded that Mr. Troy "failed . . . to articulate where in the record he actually presented arguments to the Board regarding the alleged inequitable conduct of Samson." *Id.* at 197.  In a different part of its opinion, the district court acknowledged that Mr. Troy proved in state court "(1) that Samson improperly submitted to the PTO as its own at least one drawing of Troy's and (2) that Samson violated a confidentiality agreement with Troy Industries in the course of developing its patented inventions," and noted that "these actions may constitute inequitable conduct by Samson." *Id.* at 200 n.7.  But it concluded that "neither action proves Troy conceived of all the elements of [the Count] and timely reduced them to practice." *Id.*  Accordingly, the district court entered judgment against Mr. Troy.

Mr. Troy appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(C).

## DISCUSSION

"The district court's determination of priority in a § 146 action is reviewed de novo on appeal, and the court's factual findings supporting its legal conclusions are reviewed for clear error." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 659 F.3d 1186, 1192 (Fed. Cir. 2011).  In a § 146 proceeding, the burden of persuasion rests on the junior party. *Id.* at 1191.

Mr. Troy challenges the district court's refusal to consider evidence pertaining to issues not raised before the Board.  He contends that the Supreme Court rejected the rule against new issues when it held that "there are no limitations on a patent applicant's ability to introduce

new evidence in a § 145 proceeding beyond those already present in the Federal Rules of Evidence and the Federal Rules of Civil Procedure." *Kappos v. Hyatt*, 132 S. Ct. 1690, 1700–01 (2012).

Samson contends that the district court correctly applied our precedent when it refused to consider issues not raised before the Board. In its amicus brief, the PTO argues that our opinion in *Hyatt* "expressly endorsed the district court's ability to prohibit parties from raising new issues during its review of Board decisions." PTO Br. 3 (citing *Hyatt v. Kappos*, 625 F.3d 1320, 1335 (Fed. Cir. 2010) (en banc), *aff'd*, 132 S. Ct. 1690). The PTO argues that the Supreme Court's affirmance of *Hyatt* did not overrule our holding regarding new issues because the *Hyatt* case concerned only the presentation of new evidence on issues that *were* raised before the Board.

We conclude that the Supreme Court's decision in *Hyatt* permits new evidence to be admitted without regard to whether the issue was raised before the Board. The Supreme Court held, without qualification, that "there are no evidentiary restrictions beyond those already imposed by the Federal Rules of Evidence and the Federal Rules of Civil Procedure." *Hyatt*, 132 S. Ct. at 1694; *see also id.* at 1700 ("[W]e agree with the Federal Circuit that 'Congress intended that applicants would be free to introduce new evidence in § 145 proceedings subject only to the rules applicable to all civil actions, the Federal Rules of Evidence and the Federal Rules of Civil Procedure.'") (quoting 625 F.3d at 1331); *id.* at 1700–01 ("[W]e conclude that there are no limitations on a patent applicant's ability to introduce new evidence in a § 145 proceeding beyond those already present in the Federal Rules of Evidence and the Federal Rules of Civil Procedure."). Analyzing the language of § 145, the Court concluded: "By its terms, § 145 neither imposes unique evidentiary limits in district court proceedings nor establishes a heightened standard of review for factual findings by the

TROY v. SAMSON MANUFACTURING CORP.

PTO." *Id.* at 1696. The Court expressly rejected the notion that administrative law principles could form the basis for limiting the evidence admissible in a § 145 proceeding: "We reject the Director's contention that background principles of administrative law govern the admissibility of new evidence. . . . Consequently, the district court must make its own findings *de novo* and does not act as the 'reviewing court' envisioned by the APA. We also conclude that the principles of administrative exhaustion do not apply in a § 145 proceeding." *Id.* (citation omitted).

Based on the Supreme Court's holding in *Hyatt* that there are no limits on the admissibility of evidence in such civil actions except those in the Federal Rules of Evidence and Federal Rules of Civil Procedure, we conclude that new evidence on new issues is admissible in such proceedings. *Accord Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 802 (E.D. Va. 2013) (holding that prohibiting a party from raising new issues would be contrary to *Hyatt*). Introducing new evidence on a new issue in a civil action is not barred by any Federal Rule of Evidence or Federal Rule of Civil Procedure. Relying essentially on the same administrative exhaustion and Administrative Procedure Act arguments that the Supreme Court rejected in *Hyatt*, Samson and the PTO argue that evidence on new issues ought to be prohibited. We find it impossible to reconcile the limitation on evidence that Samson and the PTO seek with the Supreme Court's unequivocal language, analysis, and holding in *Hyatt*.

We conclude that to the extent that our prior precedent, *see, e.g.*, *Conservolite v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994), held that new evidence on an issue not presented to the Board was generally to be excluded in district court proceedings, it is no longer viable following the Supreme Court's *Hyatt* decision. It is established that a later panel can recognize that the court's earlier

decision has been implicitly overruled as inconsistent with intervening Supreme Court authority. *See, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) ("[C]ircuit precedent, authoritative at the time that it has issued, can be effectively overruled by subsequent Supreme Court decisions that are closely on point, even though those decisions do not expressly overrule the prior circuit precedent.") (internal quotation marks omitted); *see also United States v. Fisher*, 502 F.3d 293, 296, 306–07 (3d Cir. 2007); *Dawson v. Scott*, 50 F.3d 884, 892 n.20 (11th Cir. 1995) ("In view of these intervening Supreme Court precedents, [the prior panel decision] does not control and appears to be overruled."). We have adopted and applied this principle. *See, e.g.*, *Doe v. United States*, 372 F.3d 1347, 1354–57 (Fed. Cir. 2004) (concluding that prior precedent has been undermined by intervening Supreme Court decisions, and was therefore "no longer good law"); *see also Conforto v. Merit Sys. Prot. Bd.*, 713 F.3d 1111, 1116–17, 1123–25 (Fed. Cir. 2013) (majority and dissent disagreeing over whether an intervening Supreme Court decision has *sub silentio* overruled our prior precedent).

"[T]he issues decided by the higher court need not be identical to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller*, 335 F.3d at 900. Indeed, lower courts are "bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis.'" *Id.* (citing Antonin Scalia, *The Rule of Law as the Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989)); *see also United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011) ("[W]e are an intermediate court within the federal system, and as such, we must take our cue from the Supreme Court. . . . . Setting [a prior panel's] holding aside for a moment, in our estimation the case's *reasoning*

has been fatally undercut by the Supreme Court.") (emphasis in original).

This, of course, only addresses whether the Supreme Court's decision in *Hyatt* prevents a limitation on evidence based on administrative law principles where such a limitation does not exist in the Federal Rules of Evidence or Federal Rules of Civil Procedure. We conclude that this limitation is inconsistent with the Supreme Court's decision in *Hyatt*.

Samson also argues that even if *Hyatt* requires that the district court admit such new evidence, this holding is applicable to § 145 actions only. Samson argues that the proceeding at issue in this case, an interference arising under § 146, ought not be governed by the same rules. Troy responds that there is no meaningful difference between § 145 and § 146 and that both types of proceedings ought to be subject to the same evidentiary rules. The PTO argues that, in its view, our ruling on new issues will apply to both § 145 and § 146; it contends that any distinction on admissible evidence between the two sections would be "difficult" to make. Oral Argument at 45:10–45:19, *available at* http://cafc.uscourts.gov/oral-argument-recordings/all/troy.html.

Section 146 and its predecessor statutes date back to the Patent Act of 1836. Act of July 4, 1836, ch. 357, 5 Stat. 117 (1836 Act). The 1836 Act provided an applicant who was dissatisfied with a PTO decision in an interference a "remedy by bill of equity." *Id.* § 16, 5 Stat. at 123–24. This statute provided that the court with jurisdiction over such a bill of equity could "adjudge . . . the fact of priority of right or invention." *Id.* § 16, 5 Stat. at 124. This is the origin of the current § 146. Three years later, Congress expanded the applicant's remedy of a bill of equity to ex parte actions (currently covered under § 145). *See* Act of Mar. 3, 1839, ch. 88, § 10, 5 Stat. 353, 354. Hence, what is now covered by two separate provisions,

§ 145 and § 146, began in a single statutory section, where there was no distinction in the form of the bill of equity that would ensue. The 1952 Patent Act broke this single statutory section into two sections, § 145 (ex parte proceedings) and § 146 (interferences). Act of July 19, 1952, ch. 950, §§ 145–46, 66 Stat. 792, 803. The question we confront is whether there are differences between § 145 and § 146 such that the evidentiary rules that apply to § 145 actions ought not to similarly apply to § 146 actions. We see no basis in the language of the statutes for differing treatment with regard to the types of evidence that ought to be admitted.

Section 146 states:

> Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have *remedy by civil action*, if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided. *In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party* upon the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, *without prejudice to the right of the parties to take further testimony.* The testimony and exhibits of the record in the Patent and Trademark Office *when admitted* shall have the same effect as if originally taken and produced in the suit. . . .

35 U.S.C. § 146 (2006) (emphases added). Exactly like § 145, § 146 provides for a "remedy by civil action." Section 145 further states that the district court "may adjudge that such applicant is entitled to receive a patent

for his invention . . . as the facts in the case may appear." It is true that § 146 does not contain this "adjudge" language. However, we conclude that the language of § 146 is stronger in its indication that new evidence be admissible. Section 146 explains: "In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party . . . [and] *when admitted* shall have the same effect if originally taken and produced in the suit." By its express terms, the PTO record is not required to be part of the § 146 civil action at the district court. We interpret this language as contemplating a fresh start in the district court. Moreover, § 146 expressly states that the parties have "the right . . . to take further testimony." Section 145 has no explicit mention of the permissibility of additional evidence. Based upon the language of the statute, we see no basis for concluding that new evidence is permitted in § 145, but not in § 146. We thus conclude that the Supreme Court's decision in *Hyatt* applies with equal force to both § 145 and § 146 actions.

We are mindful of the fact that the Supreme Court in *Hyatt* discussed possible tension between language in two of its precedents—*Butterworth v. United States ex rel. Hoe*, 112 U.S. 50 (1884), and *Morgan v. Daniels*, 153 U.S. 120 (1894). The Court explained that although both arose under Rev. Stat. § 4915 (which combined interferences and ex parte actions), the two cases addressed different circumstances. *Hyatt*, 132 S. Ct. at 1699. It is correct that these cases came to the Supreme Court in different postures. *Morgan* was an interference proceeding, 153 U.S. at 122, whereas *Butterworth* concerned a proceeding in which a disappointed patent applicant challenged whether the Secretary of the Interior had the authority to reverse a decision of the Commissioner of Patents in an interference, 112 U.S. at 54. *Butterworth* stated that the applicant's challenge "is a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity

practice and procedure.  It is not a technical appeal from the Patent-Office . . . confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced and upon the whole merits." 112 U.S. at 61 (quoted in *Hyatt*, 132 S. Ct. at 1698). There is no logical or textual reason to limit the *Butterworth* new evidence principles to § 145 actions.  There was no discussion in *Hyatt* of the language of § 146, or any conclusion that there was any basis for differentiating the two statutes as they relate to the type of evidence that is admissible.  In fact, the Court indicated that "in this case we are concerned only with § 145 proceedings in which new evidence has been presented to the District Court." *Hyatt*, 132 S. Ct. at 1699.

We conclude that the Supreme Court's decision ought not to be read to create an evidentiary chasm between § 145 and § 146.  The Court explained that "*Morgan* did not involve a proceeding in which new evidence was presented to the District Court." *Id.* at 1699.  *Morgan* involved the standard of review that ought to apply in interferences when no new evidence has been introduced. 153 U.S. at 124–25.  It is in this context that *Morgan* stated that a suit under § 4915, the predecessor to both § 145 and § 146, is "something in the nature of a suit to set aside a judgment." *Id.* at 124.  The *Morgan* Court was not making any determinations about admissibility of evidence, but rather was considering the appropriate standard of review the district court should use when reviewing a PTO decision based on the same record.  *See Dickinson v. Zurko*, 527 U.S. 150, 158–60 (1999) (explaining that *Morgan* stands for the principle that the deferential court/agency standard of review applies where the district court decided the case "without additional testimony").  In *Hyatt*, the Supreme Court decided that when new evidence is introduced, the district court must make *de novo* fact findings.  *Hyatt*, 132 S. Ct. at 1701.  Our decision today, like the Supreme Court's decision in

TROY v. SAMSON MANUFACTURING CORP.

*Hyatt*, is consistent with *Morgan*. To be clear, our deci-
sion today is not concerned with the standards of review
enunciated in either *Hyatt* (*de novo* if new evidence is
admitted) or *Morgan* (deferential if on the same record).

Turning to the case before us, we vacate the district
court's decision and remand with instructions to consider
the new evidence and arguments raised by Mr. Troy in his
district court filings. Mr. Troy is not prohibited from
arguing that he established reduction to practice at least
as of July 2004. On remand, the district court should
consider all evidence presented by Mr. Troy including the
Conley deposition and the Chin affidavit to establish a
July 2004 reduction to practice. Mr. Troy also argues that
the misappropriated material is evidence that supports
his claimed dates of conception. On remand, the court
should consider Mr. Troy's arguments and evidence
regarding Samson's alleged inequitable conduct based
upon the misappropriation.[2]

### VACATED AND REMANDED

---

[2] We see no error in the district court's finding that
Troy failed to establish a February 2004 reduction to
practice date. The court considered all evidence presented
on this issue, and it need not be revisited on remand.